Filed 10/21/22 In re Z.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re Z.S. et al., Persons Coming Under the Juvenile Court Law. | C095959 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.S.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JV202092, JV202093) |

T.S., mother of the minors, appeals from the juvenile court's orders terminating parental rights and freeing the minors for adoption as to minor A.M.[1]  (Welf. & Inst.

---

[1] Minor A.S. is not a party to this appeal.  Mother concedes on appeal that the ICWA issue as to Z.S. is not yet ripe and therefore limits her arguments to A.M. only.

Code, §§ 366.26, 395.)[2]  Mother contends the Yolo County Health and Human Services Agency (Agency) and the juvenile court failed to comply with the requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).  We will affirm the juvenile court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited to compliance with the ICWA, we dispense with a detailed recitation of the underlying facts and procedure.  It suffices to say that mother has three children, two with a man who is now deceased, and A.M., whose father is P.M. (father).  The minors were detained in January 2020, and thereafter became dependents of the juvenile court due to mother's untreated substance abuse issues and physical abuse of the minors that rendered her unable to adequately care for and protect the minors and placed them at risk of harm.

Mother initially denied having any Indian heritage and completed a parental notification of Indian status to that effect.  She indicated she had no information regarding father's location or his possible Indian ancestry.  At the detention hearing, the juvenile court found the ICWA did not apply as to mother but deferred its finding as to father.

The Agency subsequently learned mother had claimed in a previous child welfare case that she may be part of the Pomo Indian Tribe and again asked her about her Indian ancestry based on this new information.  She denied Indian ancestry, noting that she had "found out she is not part of the Pomo Tribe because she does not have enough Indian blood."  The Agency was unsuccessful in contacting father, but had contacted his cousin and aunt, both of whom stated they did not think father had any Indian heritage, but denied having any information in that regard.

_____

[2]  Undesignated statutory references are to the Welfare and Institutions Code.

2

Father was present and represented by counsel at the jurisdiction hearing on February 11, 2020. His counsel informed the juvenile court that father denied having any Indian ancestry but added, "[W]ell, he doesn't have a roll number but there may be some Native American history, so we'd ask you not [to] make a final determination on that until he's had an opportunity [to] meet with the social worker and sort out whether he has direct connection that can be made. He believes there's some Native American history somewhere." The court again deferred its ICWA finding as to father. On February 24, 2020, father reported to the social worker that he did not believe he had any Indian ancestry.

On April 24, 2020, the Agency sent ICWA notices to the Bureau of Indian Affairs (BIA) and 22 other tribes connected to the Pomo Tribe.

The April 2021 status review report and the October 2021 section 366.26 report both reiterated the information previously provided by the Agency regarding the ICWA inquiries, adding only that father had again denied having any Indian ancestry.

At the October 2021 status review hearing, the Agency explained it was waiting for responses from the noticed tribes. At the Agency's request, the juvenile court continued the section 366.26 hearing for 60 days in order for the ICWA issue to resolve. The Agency filed an addendum report on December 23, 2021, explaining that mother had claimed possible Indian ancestry with the Pomo Tribe in the previous case and, as a result, the Agency had sent ICWA notices to the BIA and 22 other tribes. It had confirmed with 21 tribes that mother was not recognized as a tribal member, and had not yet received a response from the Pinoleville Reservation despite numerous efforts to contact that tribe.

On January 14, 2022, the Agency reported it had yet to receive a response from the Pinoleville Reservation. Mother's attorney argued the section 366.26 hearing should not go forward until receipt of a response from the final tribe stating, "I see that the agency has been diligent in seeking responses from other tribes and has succeeded in

3

doing so with due diligence, and I think we should be waiting from a response for the last tribe before proceeding." The juvenile court continued the section 366.26 hearing.

The Agency filed another addendum report on March 14, 2022, reiterating its previously reported ICWA efforts, including its additional efforts to contact the Pinoleville Reservation without success. The Agency requested that the juvenile court find the ICWA did not apply to A.M. At the March 15, 2022, section 366.26 hearing, the Agency explained the social worker had received a call from the Pinoleville Reservation confirming that the ICWA did not apply to mother. After finding the Agency exercised due diligence in its ICWA investigation and the ICWA did not apply to A.M., the juvenile court terminated parental rights.

Mother timely appealed from the juvenile courts' orders; the case was fully briefed and assigned to this panel in September 2022.

## DISCUSSION

Mother contends the Agency did not comply with its initial duty of inquiry pursuant to the ICWA when it failed to inquire of available relatives, and the juvenile court erred when it found the ICWA did not apply to the minor A.M. She further claims the ICWA notices were incomplete. She specifically makes these arguments only as to the inquiry related to her, not father. We see no error.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Agency have an affirmative and continuing duty, beginning at

4

initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.,* subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Here, mother repeatedly denied any Indian heritage throughout the proceedings. Although she claims on appeal to have *told the Agency* that she may be a part of the Pomo Tribe, the record instead reflects that the Agency *first* learned of mother's statement in a previous child welfare case that she may have Indian ancestry through the Pomo Tribe, and *then* asked mother about it. Mother then denied Indian ancestry yet again, and confirmed she had learned since the time of the previous case that she was not eligible for membership in the Pomo Tribe. Based on that information, the Agency had no reason to believe the minors were Indian children. (§ 224.2, subd. (a); *In re D.S.,*

*supra*, 46 Cal.App.5th at p. 1052.) Nonetheless, the Agency sent ICWA notices to 22 Pomo Tribes, all of whom eventually confirmed mother was not a tribal member.

Mother now claims section 224.2, subdivision (e) required the Agency to inquire of the available extended family members regardless of her consistent denial of Indian ancestry and despite the absence of any suggestion from her that a family member might have more information. She also broadly claims prejudice from the Agency's perceived failure. She points to the Agency's actions in sending ICWA notices to the Pomo tribes as evidence that the Agency "must have had reason to believe," and even "acknowledged . . . there was a reason to believe" the minor had Indian heritage. But she cannot point to the *origin* of such belief, and we see no information in the record that would support a reason to believe the minor was an Indian child. Indeed, the Agency's efforts appear to have gone above and beyond its obligations given the circumstances, which is laudable rather than inculpatory. Therefore, "neither the duty of further inquiry nor ICWA's notice provisions are at issue." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*).)

To support her claim of prejudice, mother claims the Agency's failure to inquire of available extended relatives resulted in "defective" ICWA notices sent to the tribes and compromised the juvenile court's ICWA ruling. We are not persuaded.

First, formal ICWA noticing to the relevant tribes pursuant to section 224.3 is simply not required unless an agency's further inquiry results in a *reason to know* the child is an Indian child. (§ 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)]; *In re D.S., supra*, 46 Cal.App.5th at p. 1052.) Here, as we have explained, there was no *reason to know* the minor was an Indian child. The fact that the Agency sent ICWA notices to the Pomo Tribes, standing alone, did not signal a reason to believe, let alone a reason to know. Instead, the many notices served as part of the Agency's *initial* inquiry, made after learning about mother's past claim of possible Pomo Tribe affiliation, as further

6

evidenced by the fact that the Agency had direct contact with the tribes through which it received the responses to its inquiry. (See § 224.2, subd. (b).) No tribe indicated a need for more information and, contrary to mother's assertion, extensive biographical family information was not required under these circumstances.

Second, in support of her claim of reversible error based on defective noticing, mother cites *In re Y.W.* (2021) 70 Cal.App.5th 542 and *Benjamin M., supra*, 70 Cal.App.5th 735, but those cases are inapposite. The father in *In re Y.W.* claimed Indian heritage; the mother denied heritage but stated she had no information about her biological relatives because she was adopted at the age of two. (*In re Y.W.*, at pp. 547-548.) Here, mother unequivocally denied Indian ancestry and, although she was adopted, her biological grandparents were her adoptive parents.

In *Benjamin M.*, the father never appeared in the case. (*Benjamin M., supra,* 70 Cal.App.5th at p. 740.) The agency never asked the father's extended family members about the father's possible Indian ancestry. (*Id.* at p. 744.) The appellate court concluded the error was not harmless because the information those relatives could have given was "readily obtainable" and "would likely have shed meaningful light on whether there is reason to believe" the minor was an Indian child. (*Ibid.*) Here, as we have explained, mother appeared in the case and repeatedly denied Indian ancestry (as did father, although mother does not challenge the adequacy of the inquiry as to him). There is no indication in the record or from any other source, including any proffer on appeal, that information from the maternal relatives was likely to contradict mother's repeated denials of Indian heritage. Nor is there any indication that more complete notices would have made a difference, even if they had been required.

As we have detailed above, mother repeatedly denied any Indian ancestry and confirmed those denials when the Agency learned of her prior claims regarding possible affiliation with the Pomo Tribe. In an abundance of caution, the Agency sent ICWA notices to the Pomo Tribes and received confirmation that mother was not affiliated with

7

the tribes. The Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." *(In re D.S., supra*, 46 Cal.App.5th at p. 1053.) Mother did not suggest that her relatives might have additional information. To date, there presents in this case no reason to believe A.M. might be an Indian child as defined by the ICWA. (See *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [parent asserting failure to inquire must make an offer of proof or affirmatively claim Indian heritage on appeal].)

We see no error and no prejudice from the ICWA inquiry in this case.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                 /s/
                                             Duarte, Acting P. J.

We concur:


       /s/
Hoch, J.


       /s/
Renner, J.